UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ELAINE L. CHAO, Secretary of Labor,     )
United States Department of Labor,      )
           Plaintiff,                )
                                )
           v.                       )         CAUSE NO.:  2:07-CV-68-RL
                                )
HARRIS N.A.,                            )
           Defendant.               )

**OPINION AND ORDER**

This matter is before the Court on My Smart Benefits, Inc.'s and Jonathan E. Hogge's Motion to Intervene [DE 22], filed on February 26, 2008.  On March 10, 2008, the Department of Labor ("DOL") filed a response in opposition to My Smart Benefits, Inc.'s ("MSB") and Jonathan Hogge's ("Hogge") Motion to Intervene; and on March 13, 2008, Harris N.A. ("Harris") filed a response in opposition to MSB's and Hogge's Motion.  On March 20, 2008, MSB and Hogge filed a reply in support of their Motion.  For the following reasons, the Court grants the Motion to Intervene.

**BACKGROUND**

Plaintiff filed her Complaint in this matter on March 2, 2007, alleging that Mercantile Bank of Indiana ("Mercantile"), a predecessor financial institution acquired by Harris, was the depository bank for monthly payments made by individual members of the MSB dental and vision reimbursement program.  According to the Complaint, the individual members sponsored "employee welfare benefit plans" or "employee benefit plans" within the meaning of ERISA. Plaintiff alleges that on November 25, 2003, MSB ceased operations and caused $261,604.01 in

benefit plan assets to be deposited into an MSB corporate account at Mercantile.   Thereafter, Mercantile allegedly accepted payment from that account to pay off an MSB loan from Mercantile and to pay off other Mercantile related expenses.   Plaintiff alleges that Mercantile's transfers of MSB's assets violated provisions of ERISA.

On March 2, 2007, the parties entered into a Consent Order and Judgment, which the District Court approved on March 8, 2007.   In the Consent Order, Harris acknowledged that the monies transferred by Mercantile did not belong to MSB but were assets of various employee welfare benefit plans established by employer clients of MSB.   Pursuant to the Consent Order, the parties appointed an Independent Fiduciary, Jeanne Barnes Bryant, to receive monies, to place the monies in trust, and to pay all outstanding claims of employee participants in the various employee welfare benefit plans established by employer clients of MSB.   Harris paid $181,619.91 to the Independent Fiduciary, which represented money that Mercantile used to pay off its loan to MSB and to pay other MSB expenses.   For purposes of paying all outstanding claims, Harris transferred an additional $93,001.21 to the Independent Fiduciary.   Funds paid to the Independent Fiduciary total $274,621.12.

On August 13, 2007, the Independent Fiduciary filed a Report and Plan of Distribution, setting forth the methodology under which she would collect and pay claims.  On January 9, 2008, the Independent Fiduciary filed a Second Report and Revised Plan of Distribution.  On February 13, 2008, the Independent Fiduciary filed a Revised Plan of Distribution, her latest revised plan of distribution.   Pursuant to the Revised Plan, the Independent Fiduciary devised three classes of claims. Class 1 claims are administrative fees and expenses.  Class 2 claims are unpaid participant claims.  Class 3 claims are unpaid claims of employers and others who have paid claims on behalf

of participants.  The Independent Fiduciary proposes to pay claims in order of class, and expects to pay claimants' Class 2 claims at approximately 75 cents on the dollar.

Thirteen days after the Independent Fiduciary filed her Revised Plan of Distribution, MSB and Hogge filed their Motion to Intervene and a Verified Objection to Revised Plan of Distribution and Request for Additional Time to Review Revised Plan.[1]   Once briefing of the Motion to Intervene concluded, on March 20, 2008, MSB and Hogge filed a Motion for Oral Argument, requesting that the Court schedule oral arguments on the Motion to Intervene.  The Court granted the Motion on March 24, 2008, and held oral arguments on April 3, 2008, during which MSB, Hogge, the DOL, and Harris appeared by counsel and presented oral arguments regarding the Motion to Intervene.

## ANALYSIS

In the Motion to Intervene, MSB and Hogge seek to intervene in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure.  MSB and Hogge contend that they are entitled to intervene as a matter of right under Rule 24(a), and in the alternative, are entitled to permissive intervention under Rule 24(b).  MSB and Hogge represent in the Motion and their supporting brief, as they stated to the Court at oral argument, that they seek to intervene in this matter in order to participate in the claims process.  However, plan participants remain in wait for the till to spring open and pay off their pending claims, and the DOL and Harris urge the Court to deny MSB's and Hogge's request to intervene, which they contend, if allowed, would close the till and seal off its

---

[1]The Verified Objection to Revised Plan of Distribution and Request for Additional Time to Review Revised Plan complies with Rule 24(c), which requires a potential intervenor to file along with its motion to intervene "a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).

contents yet again for some period of time, only further delaying payment of the remaining monies to their rightful owners.

Rule 24(a)(2) provides that on timely motion, a court must permit any party to intervene that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The rule has four distinct requirements.  The Court will examine each requirement separately.

### A.  Timeliness

To establish intervention by right, the party seeking to intervene must first show that its motion is timely.  The court is to "determine timeliness from the time the potential intervenors learn that their interest might be impaired."  *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (citations omitted).  The DOL and Harris argue that timeliness should be measured from the date that MSB and Hogge learned that the Court entered judgment in this matter.[2]  They contend that because the District Court entered judgment nearly one year before MSB and Hogge filed the Motion to Intervene, and because MSB and Hogge admit that they were aware of the action as of June 22, 2007, approximately eight months before they filed the Motion,[3] the Motion is not timely. However, in light of Seventh Circuit precedent, their argument is unpersuasive.  Rather, in this case, the clock started to tick for purposes of timely intervention when MSB and Hogge became aware that their interest in this action might be impaired.

---

[2]Here, judgment came in the form of an agreed Consent Decree, which the District Court approved less than one week after Plaintiff filed her Complaint initiating this action.

[3]In paragraph 5 of the Verified Objection to Revised Plan of Distribution and Request for Additional Time to Review Revised Plan, Hogge represents that based on a June 22, 2007, telephone conference between his attorney and counsel for the Independent Fiduciary, he was aware of this action.

It would be unreasonable to expect MSB and Hogge to seek intervention in this action if they felt that their interests were being adequately looked after. It would be equally unreasonable to penalize MSB and Hogge for time that elapsed prior to their becoming aware of a potential impairment. In their briefing, and in an attached affidavit signed by counsel, MSB and Hogge represent that they first learned that the Independent Fiduciary was, in their view, mismanaging payments to plan participants on February 13, 2008, in correspondence received from the Independent Fiduciary. The DOL and Harris do not dispute this claim. Less than two weeks later, on February 26, 2008, MSB and Hogge filed the instant Motion to Intervene. The Court finds that the thirteen days that elapsed between MSB and Hogge learning of the Independent Fiduciary's revised method of distribution and their filing the Motion to Intervene do not render the Motion untimely.

### B.  Sufficient interest in the action

Next, to intervene by right pursuant to Rule 24(a)(2), the potential intervenor must demonstrate that it "claims an interest relating to the property or transaction that is the subject of the action[.]" Fed. R. Civ. P. 24(a)(2). The interest shown by an applicant "must be a 'direct, significant, legally protectable' one." *See Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995) (quoting *Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989)). It is a fact specific inquiry to determine whether a sufficient interest exists. *See Sec. Ins. Co.*, 69 F.3d at 1381. The applicant's interest must be something more than a "betting" interest but need not amount to a property right. *See id.* at 1380-81 (quoting *Reich*, 64 F.3d at 322).

MSB and Hogge contend that they have several different interests in this matter that suffice for purposes of Rule 24(a)(2). First, they argue that they have a sufficient interest relating to the property that is the subject of the lawsuit. The action, in large part, concerns the proceeds of a bank

5

account kept in MSB's name, a sum of $181,619.91.  MSB and Hogge contend that because the funds were held in a bank account bearing MSB's name, they have a resulting interest in the property stored in the account.  However, it has become increasingly apparent through briefing on the Motion to Intervene and during oral argument, that the property kept in the subject bank account did not belong to MSB or Hogge.  Instead, the monies kept in the account were the assets of various employee welfare benefit plans that were held in trust, to be used for the payment of dental and vision claims of the plans' employee participants.  The current parties established the participants' ownership through investigations by the DOL and two separate and independent attorneys who specialize in ERISA benefits law and who were hired by Harris to trace ownership of the monies. MSB and Hogge have not made any argument or put forth any evidence disputing the participants' ownership of the relevant monies.  Thus, the Court finds that the property contained within the subject bank account belonged to the plan participants and that MSB and Hogge cannot show a sufficient direct interest in the property which is the subject of this lawsuit to intervene.

Next, MSB and Hogge argue that they have a sufficient interest to intervene in this action because they are parties to three separate court proceedings based largely on the same factual events that underlie this action, and that all three proceedings may potentially be affected by this action. Prior to the April 3, 2008 oral argument, the Court anticipated that the term "transaction," as it appears in Rule 24(a)(2), may become relevant to the instant dispute.  Seeking to arrive at a usable definition of "transaction," the Court requested that the parties address the meaning of the term in their oral arguments.  No party was able to set forth a clear definition, or locate a case that had done so.  Without a firm definition set by precedent, and having concluded that MSB and Hogge do not have a direct interest in the subject property of this action, the Court must now settle on what transaction is at issue in this matter.  Based on a review of the pleadings, along with the parties'

6

briefing on the Motion to Intervene and their positions at oral argument, the Court finds that this action concerns multiple transactions.  The transactions at issue are (1) Harris' payment to the DOL, which was approved by the District Court in the Consent Order and Judgment, and (2) the distribution of those funds by the Independent Fiduciary.

In their research prior to oral argument, counsel did locate several cases decided by courts around the country that discuss and apply "transaction" as used in Rule 24(a)(2).  Because the analysis of a sufficient interest is fact intensive, precedent is not likely to be controlling, but the Court finds it useful in analyzing the transactions at issue in the instant matter.  In *Loyd v. Alabama Department of Corrections*, the Attorney General for the State of Alabama sought to intervene in an action in which a county, and its local government, had entered into a consent decree whereby prisoners in a local jail would be transferred to a state facility.  176 F.3d 1336 (11th Cir. 1999).  The court found that the attorney general had an interest in the transaction– the transfer of the prisoners– such that he, on behalf of the State of Alabama, could intervene by right.  *See id.* at 1340.  The court reasoned that the consent decree affected the state's economic ability to house transferred prisoners and therefore directly impacted the state's interests, even though the state was not a party to the decree.  *See id.*

Conversely, in *Gould v. Alleco, Inc.*, the court denied corporate bondholders' attempts to intervene in an action filed by a group of stockholders against the company in which both groups were invested.  883 F.2d 281 (4th Cir. 1989).  The stockholders alleged that the company engaged in fraud related to their purchases of stock.  The bondholders filed their own lawsuit, alleging that the company violated federal securities law, and then sought to intervene in the stockholders' lawsuit, after the stockholders had entered into a settlement agreement with the company.  The bondholders asserted a theory that the settlement would deplete the company's assets and reduce the

7

bondholders' recovery in their lawsuit, should they prevail.  The court found that the potential

intervenors' general interest in the company's assets, based on speculative recovery in an unrelated

civil action, did not satisfy Rule 24's interest requirement.  *See id.* at 285.  Otherwise the court

reasoned, every corporate settlement agreement would be subject to opposition from stockholders,

bondholders, directors, and employees.  *See id.*

The facts seen here are comparable but not entirely analogous to *Loyd* or *Gould*.  Had the

MSB employee plan participants filed a motion to intervene here, it would have been analagous to

the bondholders' attempt to intervene in *Gould*, with the added attenuating caveat in *Gould* that the

potential intervenors were only one class of investors in a corporation, whereas here, the participants

are accepted to be the owners of the monies at issue.  MSB and Hogge attempt to present their

interests similar to those asserted by the attorney general and the State of Alabama in *Loyd*.  In

*Loyd*, the attorney general sought to intervene in a matter that directly affected the State's prison

budget.  Here, MSB and Hogge face potential liability in three other matters that are related to the

instant litigation: a criminal proceeding in the United States District Court for the Northern District

of Indiana, a bankruptcy matter in the United States Bankruptcy Court for the Northern District of

Indiana, and a state court civil foreclosure matter in Lake Superior Court.  All three matters involve

the same underlying general facts as the instant litigation.  MSB and Hogge argue that the

disbursement of funds in this matter will directly affect their standing in the related matters in such a

way that it constitutes an interest adequate to satisfy Rule 24(a)(2).

With regard to the pending criminal matter, Hogge is a defendant in his individual capacity

and is subject to potential criminal liability with respect to his operation of MSB and the disposition

of funds in MSB's bank accounts.  Hogge contends that the Independent Fiduciary's effectiveness in

resolving pending beneficiaries' claims will affect his standing at sentencing, should he be found

criminally liable.   Hogge's argument falls short, however, because he fails to describe or substantiate this purported affect.  He only asserts the plain contention that evidence generated in this action will also be presented for sentencing purposes in the criminal action, pursuant to the sentencing guidelines.  The Court cannot, without more, link the matters to such a degree as to allow for intervention as a matter of right.  Similarly, MSB and Hogge fail to put forth a sufficiently cogent argument explaining the effect of this action on the state court foreclosure proceeding.  The Court is loath to speculate on such matters and finds instead that MSB and Hogge fail to satisfy their burden of proof with respect to their interest in this matter as it relates to the ongoing criminal and foreclosure matters.

MSB and Hogge next contend that this matter will have a direct effect on their standing in the ongoing bankruptcy proceeding.  Hogge contends that the DOL has asserted that he is subject to civil liability, in his individual capacity, with respect to the operation of MSB and the disposition of funds in MSB's account.   Hogge asserts that any liability assigned to him as a result of the Independent Fiduciary's disposition of the funds in this matter, which is not resolved through this proceeding and the criminal action, is nondischargeable in the bankruptcy proceeding pursuant to the United States Bankruptcy Code.  In its brief opposing intervention, the DOL represents that it has filed an adversary complaint against Hogge, in which it seeks a declaration of non-dischargeability with respect to Hogge's "debts resulting from paying himself excessive fees and transferring plan assets to the MSB corporate account for the payment of MSB's debts and other expenses." DOL Resp. Br. at 3.

Based on MSB's, Hogge's, and the DOL's representations, the extent to which Hogge will be discharged from the bankruptcy proceeding depends directly on the Independent Fiduciary's ability to resolve outstanding claims in this matter.  Should the Independent Fiduciary manage to

resolve all pending claims, Hogge will no longer be affected by those former debts in the bankruptcy proceeding.  Further, to the extent that the Independent Fiduciary is not able to resolve existing claims with the allotted funds, MSB and Hogge face potential civil liability for those unpaid claims at the hands of the employee or employer plan participants.  The Court finds that in the related bankruptcy action, MSB and Hogge have shown a sufficiently direct, significant, legally protectable interest related to the property or transaction that is the subject of this action to merit their intervention by right.  While the interest asserted by MSB and Hogge is by nature one of cause and effect, which Harris argued is not sufficient for Rule 24(a)(2) purposes, the Court finds that under the facts of this case, the interest is adequate.

Harris and the DOL argue that "MSB and/or Hogge will have an opportunity in those proceedings to address any alleged deficiencies in the process and payment of claims by the Independent Fiduciary."  Harris Resp. Br. at 2; *see* DOL Resp. Br. at 3.  That may be correct, but it is not for this Court to say what defenses MSB and Hogge are entitled to present in the other matters.  And the Court need not reach that issue here.  Because they have demonstrated a significant, direct interest related to this matter, MSB and Hogge, subject to analysis of whether they satisfy the remaining requirements, must be allowed to intervene by right.

### C.  Impair or impede interest

Next, MSB and Hogge must show that they "are so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest[.]" Fed. R. Civ. P. 24(a)(2).  MSB and Hogge contend that "[t]he Fiduciary's plan will result in payments to employer plans that owe money for payment of claims, and plans that never paid fees for services provided[,]" and thus impair or impede their interest.  MSB & Hogge Mot. to Intervene Br. at 5.  In support of this argument, MSB and Hogge filed a Verified Objection to Revised Plan of Distribution and

Request for Additional Time to Review Revised Plan.  The Verified Objection provides several examples of what MSB and Hogge contend are errors resulting from the Independent Fiduciary's revised plan of distribution.  Hogge himself, under oath, represents that he reviewed a number of, but not all, claims submitted by participants.  Based on his review, which he admits has not encompassed all relevant financial documents, Hogge contends that "if the revised plan is approved, many claims that should not be paid will be paid, some claimants will be paid more than once, claim amounts will be calculated improperly, and many accounts receivable (which might result in additional funds being available) will go uncollected and disregarded."  MSB & Hogge Verified Objection at ¶ 12.

At oral argument, counsel for MSB and Hogge presented illustrative evidence regarding claims tendered by Minot Public School District #1 ("Minot").  Counsel, using printed exhibits, argued that Minot had a negative balance when MSB ceased operations, indicating that it owed money to MSB.  *See* Group Ex. C.  MSB and Hogge offer the same argument in their Verified Objection.  They argue that on October 17, 2003, shortly before MSB ceased operations, Minot had a negative account balance of $61,426.71, and that all claims were processed.  They further allege that if all claims are paid, Minot would have a negative account balance of $124,718.39.  MSB and Hogge introduced spreadsheet evidence in support of their financial conclusions.

The DOL and Harris did not rebut these contentions during oral argument and have not filed a response to MSB's and Hogge's Verified Objection.[4]  In their responses in opposition to MSB's

---

[4]On March 11,2008, the Independent Fiduciary filed a response to the Verified Objection in which she proposed, that if MSB and Hogge have information that would aid her analysis, they should provide it to her.  The Independent Fiduciary further disputed the relevance of any positive or negative employer account information.  The Independent Fiduciary contends that her charge, as instructed by the District Court, is to pay unpaid claims, regardless of any account the employer may have maintained with MSB.  This argument, concerning the adequacy of the Independent Fiduciary's method of claims processing, shall be resolved in connection with MSB's and Hogge's objections to the method of distribution, should intervention be allowed.

and Hogge's Motion to Intervene, the DOL and Harris offer the same arguments that they offered in response to MSB's and Hogge's argument that they have a sufficient interest in this matter.  The DOL and Harris contend that any interest of MSB or Hogge will not be impaired or impeded by this action because they have the ability to challenge any evidence produced in this action in the other actions pending.  The Court finds this argument similarly unavailing in this context.  The impair or impede requirement of Rule 24(a)(2) is concerned with the movant's interest in the instant matter, not its interests in other matters.  Here, MSB and Hogge have established that this action may impair or impede their interests through ineffective distribution of monies to plan participants.  As a result, the Court finds that MSB and Hogge satisfy the third requirement of Rule 24(a)(2).

### D.  Adequate representation

Finally, to show that they are entitled to intervene as a matter of right, MSB and Hogge must establish that the existing parties will not adequately represent their interests.  MSB and Hogge submit three arguments in support.  First, they contend that the Independent Fiduciary's failure to serve copies of her plans of distribution on them prior to February 13, 2008, is sufficient evidence to determine that their interests are not adequately protected.  Second, MSB and Hogge argue that the Independent Fiduciary is unable to adequately represent their interests because she is in possession of limited information from the DOL, which does not allow her to accurately process claims and determine whether they are eligible for payment.  Third, they contend that the lack of adequate representation is evidenced by the Independent Fiduciary's revised distribution plan, which will result in improper payments to certain plan participants, as explained in section C, *supra*.

In addition, MSB and Hogge argue that preventing their intervention in this action is in and of itself unfair to any adequate representation of their interests.  MSB and Hogge refer to Seventh Circuit precedent, which provides that "the general rule is that the original parties to a suit may not

stipulate away the rights of the intervenor[.]" *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 695 (7th

Cir. 2002).  Further:

> . . . parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement.  A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor . . .  And of course, a court may not enter a consent decree that imposes obligations on the party that did not consent to the decree.

*Id*. at 695-96 (quoting *Firefighters Local 93 v. City of Cleveland*, 478 U.S. 501, 529 (1986)

(citations omitted)).

In response, Harris contends that the District Court, pursuant to its March 8, 2007 Consent

Order and Judgment, appointed the Independent Fiduciary to adequately represent the interests of all

involved.[5]  Harris urges the Court to deny intervention and let the Independent Fiduciary do the job

that the District Court appointed her to do.  The Court finds Harris' argument persuasive but not

prevailing.  While the District Court appointed the Independent Fiduciary to resolve all pending

claims to the allotted monies, MSB and Hogge have introduced evidence establishing that the

Independent Fiduciary's methods will incorrectly resolve a number of claims.  As such, despite the

District Court's Order, and the Independent Fiduciary's role in this action, MSB and Hogge have

demonstrated that their intervention is necessary to adequately protect their interests.

The DOL contends that to date, Hogge has refused all of the Secretary of Labor's requests

for assistance in assessing valid claims.  The DOL urges the Court to deny MSB's and Hogge's

requests to intervene, but to allow them to submit information that would assist the Independent

---

[5]The District Court ordered that "Jeanne Barnes Bryant, J.D., CR, of Receiver Management, Inc. (the Independent Fiduciary) is hereby appointed to receive monies under this judgment, place them in trust [and to] process and pay all outstanding claims of, or on behalf of, the employee participants in the various employee welfare benefit plans established by employer clients of MSB."  *Chao v. Harris N.A.*, No. 2:07-CV-68, Consent Order and Judgment, at 3, ¶ A (N.D. Ind. Mar. 8, 2007) (Lozano, J.).

Fiduciary's claims review efforts. Theoretically, the DOL's suggestion would enable accurate payment of claims and minimize the potential costs that intervention will drain from the allotted funds. However, the DOL's argument does not establish that MSB's and Hogge's interests are currently adequately protected. Thus, under the standard set forth by Rule 24(a)(2), MSB and Hogge must, as a matter of right, be permitted to intervene.

The Court is mindful of delay to the efficient disposition of this matter resultant from MSB's and Hogge's intervention. Having only limited funds for distribution, the addition of more parties only adds to the likelihood that the Independent Fiduciary will have less funds with which to resolve all pending claims. Yet intervention is mandated here by the federal rules. Rule 24(a)(2) is concerned with the movant's interest in the action, not the interests of third party participants, who here may ultimately receive reduced reimbursements.

In addition to being mandated by rule, some practical considerations militate in favor of allowing intervention. To allow MSB and Hogge to contest the method of distribution in this action, as opposed to asserting defenses in three different matters, maximizes the efficiency of the efforts of all involved. Moreover, any defense asserted by MSB or Hogge in the other matters may come after distribution of funds and would thus have no practical effect. The Court is not of a mind that MSB and Hogge will not, after being allowed to intervene, assert any related defenses in the other actions. Rather, the Court estimates that after addressing the method of distribution in this matter, the need for MSB and Hogge to assert defenses with regard to the Independent Fiduciary's efforts will be reduced in the other matters.

14

## CONCLUSION

For the foregoing reasons, the Court now **GRANTS** My Smart Benefits, Inc.'s and Jonathan

E. Hogge's Motion to Intervene [DE 22].

SO ORDERED this 21st day of April, 2008.

<div style="margin-left: 45%;">

s/ Paul R. Cherry

MAGISTRATE JUDGE PAUL R. CHERRY

UNITED STATES DISTRICT COURT

</div>

cc:      All counsel of record